**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TIMOTHY HARNETT, *also known as*
Shaiabdullah Muhammad,

                                      Plaintiff,

               - v -                                           Civ. No. 9:07-CV-952
                                                                     (GLS/RFT)

K.D. TETREAULT, *Staff Worker,*
*Clinton Correctional Facility, et al.*;

                                      Defendants.
_____

**APPEARANCES:**                                    **OF COUNSEL:**

TIMOTHY HARNETT
Plaintiff, *Pro Se*
01-A-3567
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. ANDREW M. CUOMO                       SHOSHANAH V. ASNIS, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Attorneys for the Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

    *Pro se* Plaintiff Timothy Harnett has brought this claim, under 42 U.S.C. § 1983, alleging that the Defendants conspired to deprive him of his constitutional rights in retaliation for his filing a grievance against Defendant K.D. Tetreault. Dkt. No. 1, Compl. Defendants Thomas G. Eagen, Glenn S. Goord, and Dale Artus now bring a Motion to Dismiss for failure to state a cognizable claim pursuant to FED. R. CIV. P. 12(b)(6). Dkt. No. 39. Plaintiff opposes the Motion. Dkt. No. 44.

For the reasons that follow, it is recommended that the Motion be **granted in part** and **denied in part**.

## I. BACKGROUND

The following facts are derived from the Complaint, which, in accordance with the standard of review explained below, must be taken as true.[1]

On or about December 1, 2004, while incarcerated at Clinton Correctional Facility, Plaintiff was issued a pair of green pants by Defendant Tetreault at the "state shop," but the pants were tight and uncomfortable. Although he ordered size "XL" like his previous pair, Plaintiff quickly realized after trying the pair on that the pants he received were size "L."[2] Compl. at ¶¶ 3-6. Plaintiff mailed Tetreault several state shop slips to exchange the pants, but received no response. As a consequence, on or about December 10, 2004, Plaintiff filed a Grievance[3] against Tetreault with Defendant Artus, explaining his situation and asking to be placed on a call-out in order to exchange the pants. *Id*. at ¶¶ 8-9. On December 17, 2004, Plaintiff was called-out to go to the state shop. When his turn came at the window, Plaintiff attempted to explain his situation to Tetreault, but he was rudely cut off and told to "grieve it" if he had a problem. *Id*. at ¶ 15.

On or about December 18, 2004, Tetreault filed a Misbehavior Report against Plaintiff accusing him of disobeying a direct order and interference. *Id*. at ¶¶ 17-18. Plaintiff asserts the charges are false and that Tetreault filed the Report in retaliation for the Grievance. Plaintiff filed

---

[1] All paragraph references are to the "Facts" section of Plaintiff's Complaint.

[2] Plaintiff states that "green state pants are exchanged every year." Compl. at ¶ 3.

[3] Plaintiff refers throughout his Complaint to several "complaints," "reports," and "grievances" he sent to various Defendants. Put in context, it appears that all of these correspondences were in fact formal grievances, and so we assume as much in our analysis of the present Motion.

another Grievance against Tetreault, accusing her of filing the false Misbehavior Report in retaliation against him. *Id.* at ¶ 19. Artus responded to Plaintiff's Grievance, informing him by letter that he had referred the issue to Defendant Paul M. Knapp; Knapp, however, failed to address the problem. *Id.* at ¶ 20. Plaintiff followed up his Grievance against Tetreault with another Grievance to the Inmate Grievance Resolution Committee (IGRC). *Id.* at ¶ 21.

On December 23, 2004, Plaintiff was found guilty of the charges brought in Tetreault's Misbehavior Report, and was issued a penalty of 21 days keeplock, loss of phone, commissary, packages, and recreation. *Id.* at ¶ 23.

On or about February 3, 2005, Plaintiff was removed from his job in the air condition program and reassigned to another job. *Id.* at ¶ 27. Plaintiff asserts that said removal was an act of conspired retaliation on the part of Defendants Lt. Lacy, J. Tedford, S. Bruso, and Tetreault, all for his December Grievance filed against Tetreault. *Id.* at ¶¶ 24-29. Plaintiff sent Defendants T. Brousseau and Artus a Grievance dated February 1, 2005, regarding his removal from the air conditioning work program, but they failed to correct the problem. *Id.* at ¶¶ 32-34.

At a Hearing concerning Plaintiff's February 1, 2005 Grievance, Defendant D. LaClair ruled against Plaintiff. *Id.* at ¶ 36. Plaintiff appealed that decision to Artus and Defendant Lawrence Sears, who ruled against him.[4] *Id.* at ¶ 37. Plaintiff appealed that decision to Defendants Goord (CORC)[5] and Eagen, who rendered an unfavorable decision against Plaintiff on April 6, 2005. *Id.* at ¶ 38.

---

[4] It is unclear from the Complaint if Plaintiff is asserting that both Artus and Sears decided that appeal, or whether it was referred to one or the other. For the purposes of considering this Motion, we construe the Complaint liberally to read that both Artus and Sears decided Plaintiff's appeal.

[5] "CORC" is the acronym for the Central Office Review Committee.

On July 26, 2005, while Plaintiff was returning to his cell from the law library, Tetreault stopped Plaintiff and stated "I do what the fuck I want around here and get away with it, just like how I wrote you up and got you out [of] your air-conditional program in revenge. Now get the fuck out my sight before I write you up again." *Id.* at ¶ 39. Plaintiff filed a Grievance in response to that incident, explaining that Tetreault harassed him, and sent it to Artus and Brousseau. *Id.* at ¶ 40. On August 1, 2005, Artus sent Plaintiff a letter acknowledging his receipt of the Grievance and indicating that it had been referred to Defendant Knapp, who confirmed its receipt on August 2, 2005. *Id.* at ¶¶ 41-42.

Plaintiff alleges that in response to his July 30, 2005 Grievance, Tetreault conspired with Defendants Dupry, Bushy, G. La-Ponte, John Doe #1, John Doe #2, and John Doe #3 to retaliate against Plaintiff. *Id.* at ¶ 43. On August 4, 2005, Dupry made derogatory comments towards Plaintiff and refused to let him go out to the yard later that day. *Id.* at ¶¶ 44-45. On August 6th, La-Ponte did not open Plaintiff's cell for yard time. On August 9th, John Does #1 and #2 prevented Plaintiff from going out to the yard, and John Doe #2 stated he "would let [Plaintiff] out for yard if [Plaintiff] would stop writing everyone up." *Id.* at ¶¶ 46-47. On August 10, 2005, John Doe #3 refused to open Plaintiff's cell for law library and then called the law library and falsely stated that Plaintiff was on bed rest. *Id.* at ¶ 48.

On August 9, 2005, Plaintiff sent a Grievance to Artus regarding the actions of Tetreault, Dupry, La Ponte, John Doe #1, and John Doe #2; Plaintiff sent another Grievance regarding John Doe #3 to Artus on August 10, 2005. Artus informed Plaintiff that he had referred the August 9th Grievance to Defendant J. Tedford, and the August 10th Grievance to Defendant M. Bosco. *Id.* at ¶¶ 49-52. Plaintiff alleges that on August 11 and 12, 2005, Defendant Bushy harassed and

threatened him in retaliation for the Grievances he filed against Tetreault. *Id.* at ¶¶ 55-57. Because of these alleged threats and harassment, Plaintiff dropped all his charges against Tetreault, La-Ponte, Dupry, and all the other corrections officers. *Id.* at ¶¶ 58-59. After he dropped his Grievances, Plaintiff had no further problems with any of the Defendants. *Id.* at ¶ 60.

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citations omitted). Additionally, "[i]n assessing the legal sufficiency of a claim [under 12(b)(6)], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference." *Green v. New York State Dep't of Corr. Servs.*, 2003 WL 22169779, at *1 (N.D.N.Y. Aug. 27, 2003) (internal quotation marks and citations omitted) (alterations in original).

Pleadings submitted by *pro se* litigants should be "construed liberally," *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam), and a complaint "should not be dismissed unless 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations[,]'" *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997)). A "dismissal on the pleadings is never

warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Phillips v. Girdich*, 408 F.3d at 128.

### B. Personal Involvement

By their Motion, Defendants Goord, Artus, and Eagen assert that they were not personally involved in any of the above incidents. Dkt. No. 39, Mot. to Dismiss, Mem. of Law, at pp. 5-8. The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

Plaintiff's claims against Goord, Artus, and Eagen are that they failed to remedy the alleged constitutional violations he suffered and should therefore be held liable as supervisors. *See* Compl.

at pp. 21-23, Causes of Action.

Plaintiff states he sent Artus several Grievances regarding the retaliatory acts allegedly committed by Defendants. However, Plaintiff also states that Artus informed Plaintiff that he had referred his December 17, 2004 and July 30, 2005 Grievances to Defendant P. Knapp, his August 9, 2005 Grievance to Defendant Tedford, and his August 10, 2005 Grievance to Defendant M. Bosco. *Id*. at ¶¶ 20, 41, 50, & 52.

The Second Circuit has held that a supervisor who merely forwards a prisoner's complaint to another official for investigation is not sufficiently personally involved to be held liable under § 1983. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (dismissing claims against DOCS Commissioner who forwarded a letter from plaintiff to another official for lack of personal involvement ); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir. 2003) (holding that mere linkage in the prison chain of command does not create supervisory liability). Therefore, Plaintiff's claims against Artus, with respect to the incidents he complained of in his December 17, 2004, July 30 and August 9 and 10, 2005 Grievances, should be **dismissed** for lack of personal involvement.

Plaintiff's remaining claims against Artus, Goord, and Eagan concern their failure to remedy Plaintiff's allegedly wrongful and retaliatory removal from the air condition work program perpetrated by Tetreault, Tedford, Lacy, and Bruso. Plaintiff claims he sent a Grievance to Artus on February 1, 2005, and that LaClair conducted a Hearing on that Grievance on March 1, 2005. Compl. at ¶ 36. LaClair rendered an unfavorable decision against Plaintiff, and he appealed that decision to Artus and Sears. *Id*. at ¶ 37. Plaintiff alleges Sears and Artus denied his appeal on or about March 8, 2005. *Id*. at ¶ 37. Plaintiff also alleges that Goord and Eagen learned of his wrongful removal from the air condition work program through his subsequent appeal of the March

8th decision. *Id*. at ¶ 38.

As stated above, supervisory liability may attach when a supervisor has failed to remedy a wrong after being informed thereof through a report or appeal. *Hernandez v. Keane*, 341 F.3d at 145. Review and denial of an appeal is sufficient to establish personal involvement on the part of a prison official. *Ciaprazi v. Goord*, 2005 WL 3531464, at *16 (N.D.N.Y. Dec. 22, 2005) (Sharpe, D.J.). Accepting as we must Plaintiff's allegations as true, these three Defendants were informed of the alleged constitutional violations through Plaintiff's appeal of the unfavorable decision rendered on his February 1, 2005 Grievance, and failed to provide a remedy. Based on the facts pled, this scenario is distinguishable from the line of cases asserting that a supervisor's receipt of a letter of complaint is not enough to assert personal liability. *See, e.g., Thomas v. Coombe*, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (ignoring letter is insufficient to establish personal involvement). Instead, we are confronted with a scenario where a supervisor receives and acts on a grievance, thus placing the supervisor's actions within the second *Colon* prong wherein "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong." *Colon v. Coughlin*, 58 F.3d at 873 (cited in *Walker v. Pataro*, 2002 WL 664040, at *13 (S.D.N.Y. Apr. 23, 2002)). Perhaps discovery will reveal (and indeed it seems likely) that one or more of these Defendants was not personally involved in Plaintiff's claims, however, at this stage of the litigation, and absent clarity in the record, it is incumbent upon us to construe this *pro se* Complaint liberally in the Plaintiff's favor. *Tapia-Ortiz v. Doe*, 171 F.3d at 152.

Therefore, based on the allegations in the Complaint, and presupposing that Plaintiff was in

fact the victim of unconstitutional retaliation,[6] we cannot conclude that Plaintiff could prove no set of facts consistent with his allegations that could result in supervisory liability against Goord, Artus, and Eagen. *Phillips v. Girdich*, 408 F.3d at 127. However, this recommendation in no way precludes a future finding of no supervisory liability based on a more complete record.

To the extent that Plaintiff seeks monetary damages against Goord, Artus, and Eagen in their official capacities, those claims for relief are barred by the Eleventh Amendment, and it is recommended that they be **dismissed**. *See Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir. 1993) (citing *Hafer v. Melo,* 502 U.S. 21 (1991) for the proposition that the Eleventh Amendment bars suits for damages for state officials sued in their official capacities.)[7]

### C. Qualified Immunity

Defendants Goord, Artus, and Eagen raise the affirmative defense of qualified immunity. The Second Circuit has held that qualified immunity "turns on factual questions that cannot be resolved at [the motion to dismiss] stage of proceedings." *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002). For these reasons, any adjudication as to the applicability of the qualified immunity affirmative defense would be premature since "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004).

Therefore, the Court finds qualified immunity is not appropriate at this juncture.

---

[6] Defendants Goord, Artus, and Eagen do not challenge the viability of Plaintiff's retaliation claims against the other named Defendants, rather, they only challenge their own liability under the doctrine of qualified immunity, the Eleventh Amendment, and for lack of personal involvement. *See* Defs.' Mem. of Law.

[7] Plaintiff's request for injunctive relief against these Defendants in their official capacities should not be dismissed.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss (Dkt. No. 39) be **granted in part** and **denied in part** as explained above; and it is further

**RECOMMENDED**, that the Defendants Eagen, Goord, and Artus, be directed to file an Answer to the Complaint within thirty (30) days of the date the District Court adopts this Report-Recommendation; and it is further

**ORDERED**, that Plaintiff is advised that the United States Marshals cannot effectuate service upon the three John Doe Defendants until Plaintiff provides their identities and addresses. Failure to serve the three John Doe Defendants will lead to the dismissal of his claims against those individuals; and it is further

**ORDERED**, that Plaintiff provide a status report regarding his efforts to ascertain the identities of the three John Doe Defendants within sixty (60) days from the filing date of this Report-Recommendation; and it is further

**ORDERED**, that the deadlines for Discovery is extended until 1/30/2009, the motion to compel deadline to 3/1/2009, and the deadline for Dispositive Motions is extended until 6/30/2009; and it is further

**ORDERED**, that Defendants' request for a protective order barring discovery during the pendency of the Motion to Dismiss is **denied**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 10, 2008
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge